IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

LUCINDA GUNTER,                        )
                                       )
             Plaintiff,                )    Case No. 02-6254-HO
                                       )
             v.                        )    ORDER
                                       )
THE GUARDIAN PRESS FOUNDATION,         )
INC., an Oregon Corporation doing      )
business as the Oregon Observer,       )
et al.,                                )
                                       )
             Defendants.               )
_____)

        This action arises from litigation between plaintiff Lucinda

Gunter and defendant Aleck Turnbow regarding a property dispute

between them in state court. Gunter obtained a judgment in her

favor, but Turnbow and an advisor, defendant Roger Weidner, now

allege that the results were obtained by conspiracy to defraud and

commit perjury. After several summary judgment motions, this case

was pared down to three claims against defendants Roger Weidner and

        1 - ORDER

Ole Turnbow, which proceeded to trial.[1]

Plaintiff Gunter alleges that defendant the Guardian Press Foundation, Inc., dba the Oregon Observer, seeks to expose legal system corruption and invites persons who are victims to employ it to investigate their issues and take them public. Plaintiff contends that Turnbow, after plaintiff's initial legal victory in state court, hired the Oregon Observer and its investigative reporter Ed Snook and paid them $5,000 to investigate and publish a story about his problems with plaintiff and the legal system. Plaintiff further maintains that the Oregon Observer referred Turnbow to defendant Roger Weidner and that Weidner involved himself in further litigation between Turnbow and plaintiff in an apparent attempt to expose judicial corruption and a conspiracy involving plaintiff, her attorney, and others in the initial trial.

Plaintiff alleges that the Oregon Observer published a slanderous article which tracked the complaint drafted by Weidner, in which Snook wrote about Turnbow's complaint:[2]

---

[1]Defendant Turnbow has not responded to motions or otherwise appeared in this case since about September 16, 2003. Indeed, Turnbow failed to respond to motions for summary judgment filed against his third party claims and mail addressed to Turnbow has been returned. However, Defendant Weidner referred to Turnbow and he was apparently present at the trial. Plaintiff has not sought a default judgment against Turnbow.

[2]Plaintiff does not appear to rely on the allegations in the Turnbow complaint against Gunter and her attorney Claude Ingram as evidence of defamatory statements. As noted in previous court rulings, statements made in legal pleadings are privileged.

> During the trial Gunter took the stand and under oath perjured herself when she testified that [Turnbow] gave her a qualified warranty, that he knew of no defects and that the property was in good repair.

Plaintiff also notes that the lease agreement between she and Turnbow that was the subject of the initial litigation warranted that there were no parts of the premises or furnishings which were not in good repair and ready for occupancy. Plaintiff further alleges that after Turnbow filed the lawsuit, the Observer continued to publish the alleged slanderous remarks and did not publish anything about the outcome of the case, which was resolved in plaintiff Gunter's favor.

Defendant The Guardian Press settled the claims against it with plaintiff and this case proceed to trial before the court on March 15, 2006.[3]  Defendant Roger Weidner appeared in his own defense and as noted above, defendant Turnbow apparently was present in the courtroom.  Plaintiff asserts the following claims: (1) libel; (2) intentional infliction of emotional distress (IIED); and (3) wrongful initiation of civil proceedings.

Plaintiff presented little evidence during her case-in-chief dedicated primarily to the damages she suffered as a result of the article published in the Oregon Observer.  Plaintiff's testimony failed to indicate defendant Weidner's role in the publication of the alleged defamatory material.  Following plaintiff's testimony,

---

[3]The parties raised the right to a jury trial.

3 - ORDER

plaintiff rested her case and defendant Weidner moved to dismiss for lack of evidence to support the elements of plaintiff's claims. As discussed below, the court finds that plaintiff has failed to present a prima facia case as to any of her claims and the motion is granted.

Plaintiff's theory of the case is that Weidner wrote the first draft of the Observer article for Snook before the lawsuit was filed. Plaintiff's wrongful use of civil proceedings is premised on the theory that the Oregon Observer and Roger Weidner are operating a con game in that the Observer seeks clients for investigative services with a resulting publication of a news story about the corrupt Oregon judicial system. Plaintiff argues that the Observer advises that in most cases a lawsuit be filed before the story is published and the client is referred to Weidner who prepares a defamatory complaint, but has the client sign it pro se for filing. Then, according to plaintiff, the Observer publishes the defamatory material without any investigation and asserts a privilege to print the material because it is contained in a court record. While plaintiff's counsel offered his argument regarding these theories, plaintiff failed to produce the evidence through testimony or admissible exhibits to prove them.

A. Libel

To prevail on a claim of libel, plaintiff must prove, by a preponderance of the evidence:

1.    That the defendant made a defamatory statement;

2.    Publication or communication of the defamatory statement; and

3.    Damages

Reesman v. Highfill, 327 Or. 597, 603-04 (1998).

In general, a statement is published when it is communicated to a third party. See State ex rel Advanced Dictating v. Dale, 269 Or. 242, 246-47 (1974). A defamatory statement is an untrue statement that would subject another to "hatred, contempt or ridicule ... [or] tend to diminish the esteem, respect, goodwill or confidence in which [the other] is held or to excite adverse, derogatory or unpleasant feelings or opinions against [the other]." Reesman, 327 Or. at 603 (internal quotations and citations omitted). A defamatory statement is one that "tends so to harm the reputation of another as to lower [her] in the estimation of the community," Beecher v. Montgomery Ward & Co., 267 Or. 496, 499-500 (1973). The statement can be facially defamatory or "defamatory by implication," that is, a statement from which a reasonable person could draw a defamatory inference. Reesman v. Highfill, 327 Or. 597, 604 (1998). Further, because an opinion can be neither true nor false and because opinion is constitutionally protected free speech, opinion is not actionable defamation. Id. at 606. One who falsely, and without a privilege to do so, publishes matter defamatory to another in such a manner as to make the publication

5 - ORDER

a libel is liable to the other although no special harm or loss of reputation results therefrom.  Id.

Plaintiff also asserts a conspiracy in support of her libel claim.  When a plaintiff alleges and proves that several defendants conspired to commit a tort upon her, all the defendants involved in the conspiracy can be held liable for the overt act which is committed by one of the defendants pursuant to the conspiracy. If a conspiracy is not proved, only those defendants can be held liable who are alleged and proved to have personally committed a tortious overt act against the defendant. Security & Inves. Co. v. Locks Towing, 213 Or. 503, 512 (1958).

The previous state court proceedings demonstrate the falsity of the statement in the Oregon Observer.  Defendant Weidner continues to challenge such a finding, but this court is prevented by the principles of claim and issue preclusion from revisiting the issue.  Therefore, the court finds that plaintiff has presented sufficient evidence to support a finding that a defamatory statement was made and indeed the court so finds.  Where plaintiff's case fails is the failure of the evidence to demonstrate that defendant Weidner made or published the defamatory statement.

Plaintiff's own testimony tangentially referred to the statement and did not attribute the statement to Weidner. Plaintiff only noted that she had seen the statement published in

6 - ORDER

the Oregon Observer in issues spread throughout the town in which
she lived and worked.  In response to defendant's motion to dismiss
the claim, plaintiff's counsel referred the court to various
exhibits.  However, the exhibits fail to link the statement in the
Observer to Defendant Weidner, or defendant Turnbow for that
matter.

Plaintiff cites exhibit 5 as demonstrative of Weidner's role
in the publication of the defamatory statement.  Exhibit 5 is
allegedly a draft of the article that appeared in the Oregon
Observer sent from defendant Weidner to defendant Turnbow via
facsimile machine.  Across the top of the document it reads,
"07/14/2000  09:29      5032326691        WEIDNER...."  While
defendant Weidner's last name appears at the top of the document,
there is no indication who authored the document or to whom it was
sent.  Plaintiff has not offered evidence to support the argument
that this document was in fact authored by Weidner or that it
served as the foundation for Snook's article.  In addition, to the
extent that plaintiff relies on the "WEIDNER" notation at the top
of the document to assert that he is the author, the notation is
hearsay.

Plaintiff cites exhibit 8, which is a copy of the defamatory
article.  The byline indicates the author is "The Oregon Observer
Staff."  The article does not refer to Weidner as the author or
otherwise.  There is no indication that Turnbow authored the

7 - ORDER

article, although the article refers to his role in the underlying litigations regarding the property dispute and the charges of perjury.

Plaintiff cites exhibit 12, which is a copy of the Requests for Admission to Ole Turnbow.  In the admissions, Turnbow admits that the Oregon Observer and Ed Snook advised him to contact Weidner for assistance in preparing the complaint against Gunter, that Weidner prepared the complaint, and that Weidner assisted in preparing a draft of the press release.  Turnbow denies that Ed Snook advised him that it would be necessary to file the suit against Gunter before the news release would be printed or that he delivered a draft of the press release to Ed Snook before it was printed.  Plaintiff did not put Turnbow on the stand and while any admissions he may make could be used against him, they are not admissible to proof the truth of whether Weidner drafted the article.  Moreover, the court would have to speculate as to whether the alleged assistance by Weidner included the making of the defamatory statement.   In addition, plaintiff's exhibit 27, Response to Plaintiff's Request for Admissions by The Guardian Press, indicates that the Guardian Press denies that Roger Weidner prepared a draft of the press release and that Ed Snook prepared the final draft.

Plaintiff cites exhibit 13, Request for Admissions to Roger Weidner.  Weidner admits that he has a relationship with Ed Snook

whereby he provides information for articles to be printed in the Oregon Observer. Weidner also admits that he consulted with Snook about the complaint and its contents before it was filed. However, Weidner denies that the purpose of the complaint was to create a public record on which to base the press release, that he discussed the press release with Snook prior to its printing, or that he assisted in the preparation of the press release. Exhibit 13 fails to demonstrate Weidner made or published the defamatory statement or that he conspired with Snook in its publication.

Plaintiff fails to provide evidence that defendant Weidner made, published or conspired to make and publish the defamatory statement printed in the Oregon Observer. Accordingly, plaintiff's libel claim fails for failure to prove an essential element of her claim. Defendant Weidner's motion to dismiss this claim is granted.[4]

B.   Intentional Infliction of Severe Emotional Distress

To recover for intentional infliction of severe emotional distress, the plaintiff must prove each of the following elements by a preponderance of the evidence:

(1)   The defendant intended to inflict severe emotional distress or knew that severe emotional distress was

---

[4]Plaintiff has not moved for a default judgment as to defendant Turnbow and the court finds that plaintiff has presented insufficient evidence to support the libel claim against defendant Turnbow.

9 - ORDER

substantially certain to result from the defendant's
conduct;

(2)   The defendant's conduct caused the plaintiff severe
emotional distress; and

(3)   The defendant's conduct consisted of some extraordinary
transgression of socially tolerable behavior based on
social standards at the time of the incident[s].

Williams v. Tri-County Metropolitan Transp. Dist. of Oregon, 158
Or. App. 686, 690 (1998).

Emotional distress includes mental suffering, mental anguish,
mental or nervous shock, fright, and all highly unpleasant mental
or emotional reactions.  To be severe, the emotional distress must
be substantial or enduring, as distinguished from trivial or
transitory.  In determining the severity of emotional distress, the
court considers its intensity and duration.  Severe emotional
distress does not include temporary annoyance or injured feelings
that result from rudeness or friction among people in day-to-day
life, nor does it include mere insults, harsh or intimidating
words, or rude behavior.

Publication of a defamatory or otherwise significantly
stigmatizing statement, knowing the statement to be false,
unfounded, or unsubstantiated, is conduct that, if found to be true
by a fact finder, constitutes an extraordinary transgression of
what is socially tolerable.  Checkley v. Boyd, 170 Or. App. 721,

10 - ORDER

727 (2000).  However, courts generally emphasize that, as adding to
the socially outrageous quality of the conduct, the fact that the
defamation allegedly was to serve an ulterior purpose or to take
advantage of an unusually vulnerable individual.  Id.

Plaintiff's testimony focused on the damages she suffered as
a result of the defamatory publication in the Oregon Observer.
However, as noted above, plaintiff fails to connect defendant
Weidner or defendant Turnbow as the makers or publishers of the
article.  Accordingly, plaintiff's claim fails on an essential
element and defendant Weidner's motion to dismiss is granted.

C.  Wrongful use of Civil Proceedings

To recover for wrongful use of civil proceedings, the
plaintiff must prove the following five elements:

(1)  The defendant initiated, continued, or procured civil
     proceedings against the plaintiff;

(2)  The proceedings terminated in favor of the plaintiff;

(3)  The defendant acted without probable cause;

(4)  The defendant's primary purpose in initiating,
     continuing, or procuring the civil proceedings was other
     than securing a proper adjudication of the claim; and

(5)  The plaintiff sustained injury or damage because of the
     proceedings.

Erlandson v. Pullen, 45 Or App 467, 470-471, 608 P2d 1169
(1980); ORS § 31.230.

11 - ORDER

For purposes of a claim of wrongful initiation of civil proceedings, "probable cause" means that the person initiating the civil action reasonably believes that he or she has a good chance of establishing his claim to the court's satisfaction. Erlandson v. Pullen, 45 Or.App. 467, 475, 608 P.2d 1169 (1980). Thus, the "probable cause" standard has two sub parts: The person initiating the claim must believe that there is a good chance of establishing the claim in court and that belief must be objectively reasonable.

Plaintiff has presented sufficient evidence to demonstrate that Weidner and Turnbow initiated, procured, or continued a civil proceeding regarding Turnbow's allegations of perjury. See, Exs. 6, 13. The proceedings did terminate in favor of plaintiff. It does not appear that defendants acted with probable cause.

However, plaintiff's evidence requires speculation as to the primary purpose of the litigation. In support of the contention that the purpose was to provide a shield for publication of defamatory statements, plaintiff's counsel argues that Turnbow did not even respond to the motion for summary judgment that ultimately resulted in a favorable decision for plaintiff. But plaintiff fails to offer evidence of the documents filed in the case other than the complaint and judgment. Moreover, plaintiff presents no evidence, only argument, to support her theory that defendants filed the case as a pretext to publish the defamatory article protected by a privilege to provide a true report of a judicial

12 - ORDER

proceeding.    The    exhibits    plaintiff    submitted    only    offer
defendants' denials as to this alleged purpose. Accordingly,
plaintiffs claim of wrongful use of civil proceedings fails on an
essential element and defendant Weidner's motion to dismiss is
granted.

In addition, while plaintiff presents admissions from the
Guardian Press that it informed Turnbow that only public records
claims and substantiated facts are published and that it printed
the story based upon the public information of the complaint,
plaintiff offers nothing more than speculation that Turnbow's
purpose was to create a privilege to defame.    To the extent
plaintiff is still pursuing her claims against Turnbow, she has
presented insufficient evidence to sustain her claims against him.

CONCLUSION

For the reasons stated above, the court finds that plaintiff
has failed to offer evidence to support the essential elements of
her claims against defendants Weidner and Turnbow.    Accordingly,
defendant Weidner's oral motion at the conclusion of plaintiff's
case to dismiss those claims is granted and this case is dismissed.
The clerk is directed to enter judgment in favor of defendants
Weidner and Turnbow.  All pending motions are denied as moot.

DATED this   28th   day of March, 2006.

        s/ Michael R. Hogan
      United States District Judge

13 - ORDER